**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
KANSAS CITY DIVISION**

| | |
|---|---|
| SOUTHERN FURNITURE LEASING, INC.<br><br>        Plaintiff,<br>v.<br><br>YRC, INC.; ROADWAY EXPRESS, INC.; and YELLOW TRANSPORTATION, INC.,<br><br>        Defendants. | Case No.: _____<br><br>CLASS ACTION |

**CLASS ACTION COMPLAINT**

Plaintiff Southern Furniture Leasing, Inc. individually and on behalf of all persons or entities nationwide who are similarly situated, upon personal knowledge as to facts pertaining to it individually and upon information and belief as to all other matters, based on the investigation of its counsel, against the Defendants YRC Worldwide, Inc., YRC, Inc., Roadway Express, Inc., and Yellow Transportation, Inc. (collectively "YRC"), states as follows:

**I.    NATURE OF THE CASE**

1. Plaintiff brings this action to challenge YRC's widespread and systematic practice of overcharging its customers by intentionally using inflated shipment weights when determining shipment prices.

2. Plaintiff Southern Furniture Leasing, Inc. is a small business in Tallahassee, Florida that rents furniture to various individuals and businesses. As part of its operations, it is necessary for Plaintiff to ship furniture. Defendant YRC Freight, Inc. (formerly operating as Roadway Express, Inc. and Yellow Transportation, Inc.) is one of the largest less-than-truckload

1

"(LTL") freight carriers in the United States, operating from over 380 locations across the country. From its Kansas corporate headquarters, in 2018 alone, YRC made over ten million shipments from which it recognized more than five billion dollars in revenue.

3. Like thousands of other small businesses across the country, Plaintiff contracted with YRC to ship goods pursuant to a standard, pre-printed bill of lading. The bill of lading is a form agreement that YRC drafted and which is a necessary precursor to shipping with YRC. It requires a customer to provide certain information, including the type, size, and, importantly, weight of the shipment. It is the weight that primarily drives the cost YRC will charge each customer for a given shipment. Notably, the form bill of lading provides that the weight will be subject to correction and that freight charges ultimately will be paid based upon the actual goods shipped. And, as is standard practice in the industry, for years YRC—when it would reweigh shipments at a terminal or warehouse—would adjust the weight both positively and negatively (that is increase and decrease the weight) to accurately reflect the actual weight of a given shipment and charge accordingly. Positive reweights would result in an increased charge to the customer (and profit to YRC) and negative reweights would result in a decreased charge to the customer (and profit to YRC).

4. However, in 2005, YRC began an unlawful practice whereby it systematically and deliberately eliminated any negative reweights from registering in their customer information billing system. That is, at the highest levels, YRC stopped negative reweighs from decreasing prices charged to customers while still ensuring that positive reweights would increase prices charged to customers. It did so for the express purpose of gaining more than $6 million in revenue each year at its customers' expense. It withheld this information from customers, not disclosing that it was often charging based upon shipment weights that it knew were excessive.

2

5.     YRC got caught.  After ten years of investigation, the United States Department of Justice filed a *qui tam* complaint against YRC, based on documents and evidence uncovered during that investigation with the aid of a whistleblower who had worked for YRC for more than 30 years.  The *qui tam* complaint seeks the damages the United States Government incurred through YRC's unlawful practices.  This litigation seeks the damages YRC's thousands of customers have incurred from these same practices.

6.     YRC's reweigh practices are a breach of the form contract, a violation of the duty of good faith and fair dealing that underpins that contract, a violation of the Florida Deceptive and Unfair Trade Practices Act, and have resulted in YRC being unjustly enriched at the direct expense of its customers.

7.     Further, this case presents a prototypical situation for class treatment. YRC's conduct—including all relevant practices, misrepresentations, and omissions—is uniform among all customers.  Plaintiff and all class members entered into effectively identical form agreements with YRC.  The application of a common course of conduct to this contract under substantially similar situations will determine liability for the classes as a whole, ensuring that the rights of thousands of small businesses are vindicated through the efficiency of a single trial.

## II. JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $5,000,000,[1] the proposed classes consists of more than 100 members, and minimal diversity exists.

9.     This Court has personal jurisdiction of YRC because YRC has its corporate

---

[1] Given the amount of revenue YRC internally estimated it would gain from its unlawful reweigh practices, the composition of YRC's business, and the amount of time YRC's practices span, Plaintiff, upon information and belief, conservatively estimates that there is more than $45,000,000 at issue in this litigation.

3

headquarters in Overland Park, Kansas, is authorized to do business and in fact does business in this district, the specific conduct at issue in this case originated in and emanated from this district, and YRC could reasonably anticipate litigation in this district under traditional notions of fair play and substantial justice.

10. Venue is proper in this Court under 28 U.S.C. § 1391. YRC's corporate headquarters is in Overland Park, Kansas, located in the Kansas City-Leavenworth Division of the District of Kansas. The conduct giving rise to Plaintiff's claims and to the claims of each putative class member in the proposed class originated in and emanated from YRC's corporate headquarters.

### III.   PARTIES

11. Plaintiff Southern Furniture Leasing, Inc. is a Florida Corporation with its principal place of business in Tallahassee, Florida. Plaintiff's experience with YRC is typical of the classes in all relevant aspects. Plaintiff entered into the form contract with YRC and shipped goods where the value was based in part upon weight on multiple occasions.

12. Defendant YRC, Inc. is also a Delaware entity with its principal place of business in Overland Park, Kansas. YRC, Inc. does business as YRC Freight and is the successor to Roadway Express, Inc., and Yellow Transportation, Inc. In 2003, Yellow Transportation, Inc. purchased Roadway Express, Inc. In 2009, Yellow Transportation, Inc. and Roadway Express, Inc. combined corporate structures to officially operate as a single entity. At all times relevant to this Complaint, Yellow Transportation, Inc. and Roadway Express, Inc., and subsequently YRC Freight, Inc., operated in coordination and together with regard to the reweighing practices at issue.

### IV.   CLASS ACTION ALLEGATIONS

13. Plaintiff brings this action pursuant to Rule 23(a) and (b)(3), and proposes the

4

following class:

> All persons or entities who reside in the United States who, from September 1, 2005 through the date of class certification, entered into a standard contract with YRC Freight, Inc. (or its predecessors, Roadway Express, Inc. and Yellow Transportation, Inc.) and whose charges were not credited for a negative reweigh.

14. Plaintiff also proposes the following Florida subclass:

> All persons or entities who reside in Florida who, from September 1, 2005 through the date of class certification, entered into a standard contract with YRC Freight, Inc. (or its predecessors, Roadway Express, Inc. and Yellow Transportation, Inc.) and whose charges were not credited for a negative reweigh.

15. Excluded from the proposed classes are members of the judiciary, entities currently in bankruptcy, entities whose obligations have been discharged in bankruptcy, and all governmental entities.

16. Plaintiff maintains the right to create additional subclasses or classes, if necessary, and to revise these definitions to maintain cohesive classes which do not require individual inquiry to determine liability.

   **A.   Existence and Predominance of Common Questions of Law and Fact.**

17. YRC engaged in a common course of conduct which gives rise to common questions of law and fact which predominate in this litigation. This common course of conduct—deliberately failing to credit negative reweighs to customers—affected class members in the exact same manner. The amount of damages may differ among class members, but the

5

fact and type of damages is uniform among all class members and flows directly from YRC's common conduct. A single, uniform, pre-printed contract will govern all class members' contractual claims.

18. This shared nucleus of facts and law gives rise to numerous questions of law and fact which overwhelm any individual issues which might exist. Such common questions include, but are not limited to, the following:

   a. Whether YRC used standard form bills of lading with customers;

   b. Whether YRC enacted a practice whereby it did not credit negative reweights to customers;

   c. Whether YRC's standard contract required it to credit negative reweights to customers;

   d. Whether YRC implemented its negative reweigh policies through an automated system;

   e. Whether YRC's negative reweigh practices were not in good faith;

   f. Whether YRC engaged in deceptive or unfair conduct through its negative reweigh practices and its misrepresentations and omissions regarding these practices;

   g. Whether YRC's negative reweigh practices constitutes a violation of the Florida Unfair and Deceptive Trade Practices Act.

   h. Whether YRC's representations and omissions are deceptive.

   i. Whether YRC's representations and omissions are unfair.

   j. Whether YRC's conduct in creating, implementing, and refusing to credit negative reweighs constitutes a violation of the Florida Unfair and Deceptive

Trade Practices Act.

### B. Numerosity.

19. The total number of members of each putative class is so numerous that individual joinder is impracticable. YRC did not credit negative reweighs accounting for millions of dollars for a period of at least five years. The putative class and subclass each contain thousands of customers.

### C. Typicality.

20. The claims of the named Plaintiff are typical of the claims of the classes. Plaintiff, like other class members, entered into the form bill of lading, shipped goods with Defendants. Plaintiff was subject to the exact same common policies and practices which effected all class members.

### D. Adequacy.

21. Plaintiff will fairly and adequately protect the interests of the members of the class and has no interest antagonistic to those of other class members. Plaintiff shares the same interests and was harmed by the same conduct as each other class member. Resolution of this case will inherently vindicate and redress the interests of Plaintiff equally with class members. Plaintiff has retained class counsel competent and experienced in prosecuting class actions and such class counsel is financially able to represent the classes.

### E. Superiority and Manageability.

22. The class action is superior to other available methods for the fair and efficient adjudication of this controversy. Individual joinder of all members of the class is impracticable. While the total amount at issue in this litigation is very large, individual damages for a given plaintiff are comparatively small and class members have little incentive to pursue individual

claims. The interests of judicial economy favor adjudicating the claims for the Plaintiff classes in a single forum rather than on an individual basis, thus also ensuring consistent adjudications and a uniformity of decision. The proposed class definitions are objective and class membership is easily determined using customer information and financial records maintained by YRC in electronic form. Calculation of damages can be accomplished using systematic means and objective criteria. The class action mechanism is administratively feasible and provides the benefit of unitary adjudication, economies of scale and comprehensive supervision by a single court.

## V.  FACTUAL ALLEGATIONS

23. YRC Freight, Inc. is the product of the acquisition of Yellow Transportation, Inc. by Roadway Express, Inc. in 2003, resulting in a single organization which, at the time, controlled over 60% of the LTL market. For years, the companies technically operated separately before combining into a single corporate form in 2009. However, they acted in concert and collectively to implement the negative reweigh practices at issue hint his Complaint.

24. Less than truckload carriers ("LTL" carriers) consolidate shipments that do not themselves constitute a full trailer to transport and deliver, generally for manufacturing and retail businesses. YRC, like most LTL carriers, operates through a hub and spoke system. Generally, shipments are picked up from customers, transferred to terminals or warehouses, where YRC consolidates for shipment to another terminal before ultimately making delivery.

25. The driving factor of the cost for a given shipment through essentially any LTL carrier, including YRC, is weight. Customers themselves provide the specifics regarding their shipment, including size, number of packages, and, crucially, weight. But LTL carriers often reweigh shipments at their terminal or warehouse before it is delivered to its final destination in

8

order to ensure that the weight is correct and, thus, that the price charged for that shipment is correct. This process inherently involves making changes to increase the weight (called "positive reweighs," when the initial entered weight is too low) and to decrease the weight (called "negative reweighs," when the initial entered weight is too high). For years, prior to the consolidation of Yellow Transportation, Inc. and Roadway Express, Inc., YRC would credit both positive and negative reweighs to customers, as is the industry standard.

26. However, in 2005, YRC began a process by which it systematically and deliberately failed to credit negative reweighs to customers, resulting in millions of dollars unlawfully charged to customers. This practice constitutes a breach of contract, a violation of the duty of good faith and fair dealing, a violation of the Florida Deceptive and Unfair Trade Practices Act, and has resulted in YRC being unjustly enriched at the direct expense of putative class members.

### A. The Uniform YRC Contract.

27. To ship with YRC, YRC requires customers to fill out and bill of lading which constitutes the agreement between the parties. This contract is standard in all relevant ways and every putative class member entered into an effectively identical contact.

28. The form contract is a two-page agreement where all relevant terms are pre-printed by YRC. The first page of the form agreement contains blanks where the customer name and contact information is entered and a signature is made. The first page of the form contract also contains a table where the specifics of the shipment are entered, including weight.

29. The form contract specifically contemplates that the actual weight of the shipment will be taken into account. For example, it provides that the weight entered is "[s]ubject to correction," and that "[i]f the description of articles or other information on this bill of lading is

9

found to be incorrect or incomplete, the freight charges must be paid based upon the articles actually shipped."

30. And, in fact, it is an industry standard long accepted and understood between customers and LTL carriers, that the actual weight of a given shipment will be used to determine the appropriate charges in the event the carrier reweighs the shipment. YRC wrote the form bill of lading, which operates as a contract of adhesion, and under this form contract in accordance with industry standards, YRC may reweigh shipments and charge for actual shipment weights when it does so.

### B. YRC's Unlawful, Deceptive and Unfair Negative Reweigh Practice.

31. Despite the express limitations on the circumstances and amounts whereby YRC could increase prices, YRC carried out a systematic and deliberate practice of repeatedly increasing prices without contractual authorization.

32. At all times relevant to this Complaint, YRC's practice was to sometimes reweigh shipments to determine if the weight on the bill of lading is correct. Prior to September 2005, YRC would correct **all** bills of lading where the reweigh revealed a different weight than that listed on the bill of lading. In other words, where a reweigh revealed that the package weighed less than the weight listed on the bill of lading (a "negative" reweigh), YRC would decrease the shipment weight to the correct, lighter weight. If a reweigh reveled that a package weighed more than the weight listed on the bill of lading (a "positive" reweigh), YRC would similarly increase the shipment weight.

33. Because the relevant bills of lading state that customers pay based on weight, a decrease in the shipment weight results in a decrease in the amount the customer owes under the contract while an increase in shipment weight results in an increase in the amount the customer

10

owes.

34. Beginning in September 2005, YRC changed its practices and stopped making any "negative" weight corrections. In other words, while YRC continued to reweigh shipments and continued to increase the shipment weight where the reweigh revealed the shipment to be heavier than the weight listed on the bill of lading, YRC instituted a company-wide practice of eliminating all corrections to the shipment weight where the reweigh revealed that the shipment weight was lighter than the weight listed on the bill of lading.

35. YRC changed its reweigh practice for the sole purpose of increasing profits at its customer's expense. The result of this new deceptive practice is that YRC deceptively overcharges customers where a reweigh reveals a lower shipment weight. Upon information and belief, through this unfair, unlawful and deceptive practice, YRC overcharged customers between $1 million and $1.5 million a month.

36. At no time did YRC reveal this fraudulent practice to its customers. YRC did not inform its customers that it was no longer making negative weight adjustments. YRC did not inform its customers that it was unlawfully overcharging them for shipments where the reweigh revealed a lighter shipment weight. YRC did not inform its customers that it was nonetheless continuing to make positive weight adjustments.

  **C.** **The *Qui Tam* Complaint.**

37. Whistleblower James Hannum worked for Roadway and YRC for more than 30 years. During his employment with YRC, Mr. Hannum discovered that YRC, since September 2005, was deliberately preventing its automated computer system from invoicing customers, including the Department of Defense, based upon the actual weight of shipments when that weight would decrease the amount charged.

38. In 2008, Mr. Hannum filed his sealed *qui tam* complaint and provided it to the United States Attorney's office for the Western District of New York, where he resides and works. The United States Department of Justice then undertook an in-depth investigation that spanned ten years and through which it gained access to evidence from YRC, including internal YRC documents and communications.

39. In December 2018, having conducted its investigation, the United States chose to intervene and pursue these claims on its own behalf. The Complaint In Intervention filed is detailed and telling. In it, the United States alleges that:

- At YRC, as "one YRC executive stated in an internal email, 'the weight drives the price we charge and invoice the customer.'"

- YRC knew that "it was important for reweighs to be accurate" and that "[b]efore September 2005, the Defendants' reweighs caused them to correct bills of lading for both 'positive' reweighs where the revised shipment weight was heavier than the original weight, and 'negative' reweighs where the revised weight was lighter than the original weight." YRC instructed its managers that "integrity of correction information is critical in providing the customer with an accurate invoice and supporting documentation."

- In September 2005, "Roadway essentially eliminated negative reweight corrections" and, according to internal communications, instructed its employees that "[n]o negative weight corrections will be [made]."

- In February 2006, executives at Yellow—in sharing "best practices" with Roadway—decided to "eliminate all negative reweigh corrections" and, in the work request establishing as much, "ordered that Yellow 'eliminate the negative

12

      adjustments' so it could 'add [about] $500,000 per month to top and bottom line (revenue and profit)."

- YRC enacted these processes through its automated system such that, "the company's computer system would automatically reject the entry and hid the negative reweight by falsely recording the problem" as an error code. Internal communications confirm that that the customer does not receive a lowered invoice" that the "negative scans never change the mainframe data," and that for now we do not systemically [make] negative [reweigh] corrections," but added that "at some point we may to add further credibility to our process."

40. The United States, in its *qui tam* action, seeks recovery of all damages stemming from YRC's negative reweight practices incurred by the Government. The *qui tam* complaint contains allegations that this conduct was implemented across YRC's customer base. The *qui tam* action does not, and cannot, seek damages incurred by non-Government customers through this conduct. This putative class litigation seeks to recover those damages.

      **D.**      **The Applicable Statutes of Limitation.**

41. **Equitable Tolling:** Class members, despite all due diligence, could not obtain vital information relevant to the existence of the claims brought in this lawsuit. A reasonable person could not know of YRC's negative reweigh practices due to YRC's intentionally wrongful conduct. Neither Plaintiff nor any member of the putative class could have discovered, through the use of reasonable diligence, that YRC's conduct was unlawful and actionable within the time period of any applicable statutes of limitation. Nor could they have determined with the exercise of any reasonable diligence that YRC was not crediting for negative reweights, was not adjusting invoices to reflect actual weights when those weights decreased after reweighs, or had

altered its system to prevent negative reweighs from automatically decreasing invoiced weights. The filing of the unsealed *qui tam* complaint in December 2018 was the first and only public information regarding these practices available to any putative class member.

42. **Equitable Estoppel/Fraudulent Concealment:** Throughout the relevant time period, YRC actively concealed the wrongful conduct at issue in this case and failed to disclose from putative class members material information concerning the negative reweigh practices. Upon information and belief, YRC acted knowingly and intentionally to ensure that putative class members could not discover the nature and extent of the conduct giving rise to the claims brought herein, and that any class member who attempted to do so was prevented from suing within the statute of limitations. As a result, no putative class member could have discovered their claims, the YRC negative reweigh practices, or the conduct of YRC at issue in this litigation through the use of reasonable efforts or reasonable diligence. The filing of the unsealed *qui tam* complaint in December 2018 was the first and only public information regarding these practices available to any putative class member.

## VI.   CAUSES OF ACTION

### COUNT I
### BREACH OF CONTRACT
### (On Behalf Of The Class)

43. All allegations and paragraphs in this complaint are incorporated by reference.

44. Plaintiff and each member of the class entered into a form bill of lading which constitutes a written contract with YRC.

45. Plaintiff and each member of the class performed on their agreements.

46. As set out herein, through its practice of not crediting negative reweighs in to customers, YRC breached the agreements.

47. Plaintiff and each member of the class have been directly and proximately harmed by YRC's breach of contract in that each paid more for shipments than they owed under the contracts.

## COUNT II
## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING
### (On Behalf Of The Class)

48. All allegations and paragraphs in this complaint are incorporated by reference.

49. To the extent necessary, this count is pled in the alternative.

50. Plaintiff and each member of the class entered into a form bill of lading which constitutes a written contract with YRC.

51. Plaintiff and each member of the class performed on their agreements.

52. YRC failed to perform on the agreements in good faith. YRC acted arbitrarily and capriciously. It failed to fulfill any discretionary duties it might have under the contract in altering prices reasonably and in good faith. YRC's uniform course of conduct in implementing negative reweigh practices lacks honesty in fact and is inconsistent with the justified expectation that YRC would charge for shipments based upon actual weights. Through its wrongful conduct, YRC unfairly prevented Plaintiff and each member of the class from receiving the full benefits of their agreements.

53. Plaintiffs and each member of the class have been directly and proximately harmed by YRC's breach of the covenant of good faith and fair dealing in that each paid more for shipping than they owed under the contracts.

## COUNT III
## UNJUST ENRICHMENT
### (On Behalf Of The Class)

54. All allegations and paragraphs in this complaint are incorporated by reference.

55. To the extent necessary, this count is plead in the alternative.

56. Through its negative reweight practices, YRC received money from the putative class which in equity and justice it should not be permitted to keep. By charging for weights which it knew to be incorrect, by suppressing and misrepresenting material facts, and by engaging in other wrongful and unlawful conduct as set out herein, YRC obtained money which properly belongs to the putative class. The benefit conferred by the putative class was non-gratuitous and YRC realized value from this benefit. It would be inequitable for YRC to retain this benefit.

57. Plaintiff and each member of the class have been directly and proximately harmed by YRC conduct in that each paid more for shipments than they rightfully owed.

## COUNT IV
## VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT, FLORIDA STATUE § 501.201, *et seq.*
### (On Behalf Of The Florida Subclass)

58. All allegations and paragraphs in this complaint are incorporated by reference.

59. Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* ("FDUTPA"), prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

60. The stated purpose of FDUTPA is to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202.

61. Plaintiff and each member of the putative class, as "consumers" under FDUTPA (Fla. Stat. § 501.203(7)), have been harmed by YRC's unconscionable, deceptive, and unfair acts and practices in the charging of the Energy Surcharge. YRC has engaged in a deliberate,

16

systematic practice of not crediting negative reweights and of charging customers based upon shipment weights that it knew to be incorrect.

62. In doing so, YRC has engaged in YRC's deceptive practices directed toward the putative class members, including:

    a. charging for and representing weights that it knew to be incorrect;

    b. representing that true weights would be the basis of shipment charges;

    c. failing to disclose that it would reweigh shipments but only change the weight on which the shipment charge was based if that weight was greater than indicated and fail to change the indicated weight if it was less;

63. YRC makes these misrepresentations and omissions every time it sends a document charging for shipments based upon an incorrect weight.

64. YRC's misrepresentations, omissions, and deceptive practices as set out herein are likely to mislead reasonable consumers under the circumstances.

65. YRC's conduct directed toward putative class members is also unfair. Such conduct includes:

    a. implementing a practice whereby it does not credit customers for negative reweights;

    b. failing to disclose that it reweighs shipments but does not alter weights if they are greater than the actual weight; and

    c. altering its customer relationship management and/or billing system to prevent automatic negative reweighs.

66. As a result of the deceptive and unfair practices described above, each member of the putative class was damaged in that they paid more for shipments to their detriment.

## VIII. PRAYER FOR RELIEF

67. Plaintiff, on behalf of itself and each member of the putative class and subclass, demands all remedies and damages available to it, including all unlawful price increases paid to YRC, all fuel surcharges paid to YRC, injunctive relief, restitution, interest, and the attorneys' fees and costs incurred in bringing this action.

## JURY DEMAND

Plaintiff requests a trial by jury.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas as the place of trial for this action.

Dated: March 8, 2019    Respectfully submitted,

/s/ Eric D. Barton
Eric D. Barton (KS#16503)
Tyler W. Hudson (KS#20293)
Sarah B. Ruane (KS#23015)
**Wagstaff & Cartmell LLP**
4740 Grand Ave. Ste. #300
Kansas City, MO 64112
Phone: 816.701.1100
Fax: 816.531.2372
ebarton@wcllp.com
thudson@wcllp.com
sruane@wcllp.com

*Attorneys for Plaintiff*