# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| SOUTHERN FURNITURE LEASING, INC., | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 19-2129-KHV |
| | ) | |
| YRC, INC., YRC WORLDWIDE INC., | ) | |
| ROADWAY EXPRESS, INC. and | ) | |
| YELLOW TRANSPORTATION, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

On June 21, 2019, Southern Furniture Leasing, Inc., on behalf of itself and others similarly situated, filed suit against YRC, Inc., YRC Worldwide Inc., Roadway Express, Inc. and Yellow Transportation, Inc. First Amended Class Action Complaint (Doc. #10). Plaintiff alleges that defendants systematically overcharged customers for shipments, and bring claims for breach of contract (Count 1), breach of the duty of good faith and fair dealing (Count 2), unjust enrichment (Count 3) and violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201 (Count 4). This matter is before the Court on Defendants' Motion To Dismiss Amended Complaint (Doc. #12) filed July 2, 2019. For reasons stated below, the Court sustains defendants' motion.

## Factual Background

Highly summarized, plaintiff's complaint alleges the following:

Plaintiff is a business that rents furniture to various individuals and other businesses. Plaintiff entered into a contract with defendants whereby defendants would ship its goods pursuant to a standard bill of lading. This form agreement requires customers to provide certain

information, including the weight of the shipment. The weight of the shipment primarily drives the price that defendants charge for a given shipment. The agreement provides that the weight will be subject to correction and that the shipping charges will ultimately reflect the actual weight of the goods that defendants ship. Accordingly, for many years, defendants would reweigh shipments and correct the weight in their billing system to accurately reflect the actual weight of a given shipment. Where the actual weight of a shipment was greater than initially indicated ("positive reweighs"), the price that the customer owed increased. Where the actual weight of a shipment was less than initially indicated ("negative reweighs"), the price decreased. By 2006, however, defendants instituted a practice whereby it systematically and deliberately eliminated any negative reweighs from registering in its customer billing system. As a result, defendants overcharged their customers, who were unaware of this practice.

Plaintiff brings claims for breach of contract (Count 1), breach of the duty of good faith and fair dealing (Count 2), unjust enrichment (Count 3) and violation of the Florida Deceptive and Unfair Trade Practices Act (Count 4). Plaintiff seeks to recover on its own behalf and on behalf of two putative classes. The first putative class consists of "[a]ll persons or entities who reside in the United States who, from March 1, 2006 through the date of class certification, entered into a standard contract with [defendants] and whose charges were not credited for a negative reweigh." First Amended Class Action Complaint (Doc. #10) ¶ 18. The second putative class consists of "[a]ll persons or entities who reside in Florida who, from March 1, 2006 through the date of class certification, entered into a standard contract with [defendants] and whose charges were not credited for a negative reweigh." Id. ¶ 19.

**Legal Standards**

Defendants assert that the Court should dismiss plaintiff's claims under Fed. R. Civ P. 12(b)(1) and 12(b)(6) because (1) the Court does not have subject matter jurisdiction and (2) plaintiff's amended complaint fails to state a claim upon which relief can be granted.[1]

When defendants seek dismissal under Rule 12(b)(1) and 12(b)(6) in the alternative, the Court must first decide the motion under Rule 12(b)(1) because the latter challenge would be moot if the Court lacks subject matter jurisdiction. See Creamer v. Gildemeister, No. 15-4871-KHV, 2015 WL 6828186, at *2 (D. Kan. Nov. 6, 2015). Dismissal pursuant to Rule 12(b)(1) is appropriate when the Court lacks subject matter jurisdiction over a claim for relief. The party asserting jurisdiction has the burden of establishing subject matter jurisdiction. Id. (citing Port City Props. v. Union Pac. R.R. Co., 518 F.3d 1186, 1189 (10th Cir. 2008)).

In ruling on a motion to dismiss under Rule 12(b)(6), the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement of relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible – and not merely conceivable – on its face. Id. at 679-80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To determine whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Iqbal, 556 U.S. at 679. Plaintiff makes a facially plausible claim when it pleads factual content from which the Court can reasonably infer that defendants are liable for the misconduct alleged. Id. at 678. However, plaintiff must show more than a sheer possibility

---

[1] For purposes of this motion, the Court will only consider plaintiff's claims, and not those of the two putative classes. If plaintiff does not have viable claims, it cannot represent the putative classes on those claims. See Jenkins v. CARCO Grp., Inc., 339 F. Supp. 3d 1223, 1231 (D. Kan. 2018) (dismissing putative class claims because plaintiff's claims dismissed).

that defendants have acted unlawfully – it is not enough to plead facts that are "merely consistent with" defendants' liability. Id. (quoting Twombly, 550 U.S. at 557). Where the well-pleaded facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not "shown" – that the pleader is entitled to relief. Id. at 679. The degree of specificity necessary to establish plausibility and fair notice depends on context; what constitutes fair notice under Fed. R. Civ. P. 8(a)(2) depends on the type of case. Robbins v. Okla., 519 F.3d 1242, 1248 (10th Cir. 2008).

The Court need not accept as true those allegations which state only legal conclusions. See Iqbal, 556 U.S. at 678; Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). Rather, plaintiff bears the burden of framing its complaint with enough factual matter to suggest that it is entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements. Twombly, 550 U.S. at 556. A pleading that offers labels and conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement will not stand. Iqbal, 556 U.S. at 678.

## Analysis

**I.     Subject Matter Jurisdiction**

Defendants assert that the Court should dismiss plaintiff's claims under Rule 12(b)(1) because the Court does not have subject matter jurisdiction. Generally, a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction takes one of two forms: a facial attack or a factual attack. Hall v. United States, No. 12-1387-KHV, 2013 WL 4047578, at *1 (D. Kan. Aug. 9, 2013). In a facial attack, a party questions the sufficiency of the complaint's allegations as to subject matter jurisdiction. Id. (citing Holt v. United States, 46 F.3d 1000, 1002 (10th Cir. 1995)). In a

factual attack, by contrast, a party may go beyond allegations in the complaint and challenge the facts upon which subject matter jurisdiction depends. Id. (citing Holt, 46 F.3d at 1002).

Here, defendants facially attack the complaint by asserting that plaintiff's allegations fail to establish subject matter jurisdiction. Defendants' Motion To Dismiss Amended Complaint (Doc. #12) at 11-12. Specifically, defendants assert that the Court lacks subject matter jurisdiction because (1) plaintiff does not have Article III standing[2] and (2) plaintiff did not adequately plead the required amount in controversy under the Class Action Fairness Act ("CAFA").[3]

### A. Article III Standing

Defendants assert that plaintiff does not have Article III standing because it has not sufficiently alleged an injury. Article III of the U.S. Constitution limits the exercise of the federal judicial power to cases and controversies. U.S. Const. art. III, § 2. To satisfy Article III's standing requirements, plaintiff must show that (1) it has suffered an "injury in fact" that is concrete and particularized and actual or imminent, (2) the injury is fairly traceable to the challenged action of defendants and (3) it is likely, as opposed to merely speculative, that a favorable decision will redress the injury. Parks, 2015 WL 7295457, at *6.

Here, defendants argue that plaintiff has not alleged an actual concrete injury because it has not identified an occasion when it paid more for an underweight shipment. According to

---

[2] A motion to dismiss for lack of standing implicates the Court's subject matter jurisdiction and, therefore, is construed pursuant to Rule 12(b)(1). See Parks v. Kiewel, No. 15-1196-JTM, 2015 WL 7295457, at *6 (D. Kan. Nov. 18, 2015).

[3] Defendants also assert that the Court lacks subject matter jurisdiction because the Interstate Commerce Commission Termination Act ("ICCTA") bars plaintiff's suit. See 49 U.S.C. § 13710(a)(3)(B). Whether the ICCTA bars plaintiff's cause of action is not an issue of subject matter jurisdiction. The ICCTA is relevant to whether plaintiff has stated a claim upon which relief can be granted. Accordingly, the Court will construe defendants' ICCTA argument as brought under Rule 12(b)(6), which the Court addresses below.

defendants, plaintiff has merely alleged that defendants instituted a practice of systematically eliminating negative reweighs, and not that plaintiff itself fell victim to the practice. Defendants are incorrect. Plaintiff specifically alleges that it entered an agreement with defendants that required defendants to charge based on the actual weight of shipments. First Amended Class Action Complaint (Doc. #10) ¶ 30, 32. Plaintiff also alleges that defendants violated this agreement by eliminating negative reweighs, causing plaintiff to pay more for shipments than it should have. Id. ¶ 40. These allegations are sufficient to show an actual concrete injury for the purposes of Article III standing.

### B. Amount-In-Controversy Under CAFA

Defendants assert that plaintiff's allegations do not plausibly satisfy the $5,000,000 amount-in-controversy requirement under CAFA. Under CAFA, the Court has jurisdiction to hear a class action if the class has more than 100 members, the parties are minimally diverse and the "matter in controversy exceeds the sum or value of $5,000,000." Standard Fire Ins. Co. v. Knowles, 568 U.S. 588, 592 (2013) (citing 28 U.S.C. § 1332(d)(2), (d)(5)(B)). To determine whether the matter in controversy exceeds that sum, the Court aggregates the claims of the individual class members, which include "persons (named or unnamed) who fall within the definition of the *proposed* or certified class." Id. (citing § 1332(d)(1)(D)) (emphasis in original).

Here, plaintiff has sufficiently pled the $5,000,000 amount-in-controversy requirement under CAFA. Specifically, plaintiff details the following:

> Defendants have imposed the unlawful reweighing practices and fees on more than 1,000 putative class members each year. Senior officers for Defendants—as shown in internal documents discovered by the Department of Justice during its investigation of these practices—estimated that by failing to credit negative revised weights to customers, YR would retain approximately, $2 million per month. Conservatively, that puts $12 million at issue per year, and—given that this conduct extends to 2005, at least—more than $100 million at issue for YRC's unlawful reweighing practices alone.

First Amended Class Action Complaint (Doc. #10) ¶ 9. Defendants assert that plaintiff cannot base its amount-in-controversy allegation on estimates of the revenue that the reweighing practice generated.

This argument is unpersuasive. Plaintiff alleges that defendants' reweighing practice caused it and the other class members to pay more for shipments than they should have. It also alleges that, as Department of Justice findings can show, this reweighing practice allowed defendants to wrongfully retain more than $100 million since 2005. In other words, the class members combined to lose approximately $100 million as a direct result of defendants' reweighing practice. These allegations are sufficient for the purposes of pleading the amount-in-controversy under CAFA. Accordingly, the Court has subject matter jurisdiction.

## II.     Failure To State A Claim

Defendants assert that the Court should dismiss plaintiff's claims because the ICCTA bars its cause of action.[4] The ICCTA governs billing disputes between shippers and motor carriers.[5] 49 U.S.C. § 13710(a)(3)(B). In relevant part, the ICCTA states as follows:

> If a shipper seeks to contest the charges originally billed or additional charges subsequently billed, the shipper may request that the [Surface Transportation Board] determine whether the charges billed must be paid. A shipper must contest the original bill or subsequent bill within 180 days of receipt of the bill in order to have the right to contest such charges.

---

[4] Defendants assert several other reasons why the Court should dismiss plaintiff's claims under Rule 12(b)(6). Because the Court dismisses plaintiff's claims on ICCTA grounds, it does not address defendants' other arguments.

[5] Here, the parties do not dispute that defendants are "motor carriers" for purposes of the ICCTA. See 49 U.S.C. § 13102(14) (defining "motor carrier" as "a person providing motor vehicle transportation for compensation"); see also Herrod v. Wilshire Ins. Co., 499 F. App'x 753, 759 (10th Cir. 2012).

Id. Plaintiff does not dispute that it failed to contest the alleged inflated bills within 180 days of receipt. Accordingly, defendants assert that pursuant to the ICCTA, plaintiff lost the right to contest the bills in a lawsuit. Plaintiff responds by asserting that (1) the ICCTA does not apply to its claims and (2) even if the ICCTA does apply, plaintiff complied with the statute by contesting the bills within 180 days of discovering the inflated charges.

### A.     Application Of The ICCTA

Plaintiff asserts that the ICCTA does not apply to its claims because (1) the ICCTA only governs proceedings before the Surface Transportation Board ("the Board"), (2) it is not a "shipper" under the ICCTA and (3) its claims do not involve a "billing dispute."

#### 1.     The ICCTA Applied To Lawsuits

First, plaintiff asserts that the ICCTA does not apply to lawsuits in court, but instead applies only to proceedings before the Board. Under this interpretation, if a party fails to contest a bill within 180 days of its receipt, the ICCTA would prevent that party from challenging the bill in front of the Board, but would not prevent it from challenging the bill in court. This interpretation is unpersuasive. The goal of statutory interpretation is to "ascertain the congressional intent and give effect to the legislative will." In re Taylor, 899 F.3d 1126, 1129 (10th Cir. 2018) (quoting Ribas v. Mukasey, 545 F.3d 922, 929 (10th Cir. 2008)). To do so, the Court first turns to the statute's plain language, as the Court "must presume that a legislature says in a statute what it means and means in a statute what it says there." In re McGough, 737 F.3d 1268, 1273 (10th Cir. 2013). If the statute's words are unambiguous, the plain meaning controls. See id. (when statute's words are unambiguous, "judicial inquiry is complete").

Here, under the plain and unambiguous language of the ICCTA, a party must contest a shipping bill within 180 days in order to have the right to contest the charges, whether in court or

in front of the Board. The first sentence of 49 U.S.C. § 13710(a)(3)(B) provides that if a shipper wants to contest a bill, it *may* bring its challenge in front of the Board. Thus, the first sentence is permissive: a shipper seeking to contest a bill can choose to bring its challenge before the Board, or it can choose not to. In other words, the shipper has the option to bring its challenge elsewhere, such as a lawsuit in court. By contrast, the second sentence of 49 U.S.C. § 13710(a)(3)(B) is mandatory – it provides that the shipper *must* contest the bill within 180 days of receipt in order to challenge the charges. Importantly, unlike the first sentence, the second sentence does not limit its mandate to challenges brought before the Board. Rather, it plainly states that a shipper must contest the bill within 180 days "in order to have the right to contest such charges" – it does not state "in order to have the right to contest such charges *in front of the Board*." The Court declines to adopt plaintiff's interpretation by rewriting the statute. Under its unambiguous language, a shipper does not have the right to contest a shipping bill, whether in court or in front of the Board, unless it does so within 180 days of receipt.[6] See Cerdant, Inc. v. DHL Express (USA), Inc., No. 08-186, 2010 WL 3397501, at *6 (S.D. Ohio Aug. 25, 2010) (under terms of ICCTA, shipper who fails to contest bill within 180 days lacks standing); see also Jim Ball Pontiac-Buick-GMC, Inc. v. DHL Exp. (USA), Inc., No. 08-761C, 2011 WL 815209, at *4 (W.D.N.Y. Mar. 2, 2011) (under ICCTA, shipper who failed to contest bill within 180 days may not sue); Carolina Traffic Servs. of Gastonia, Inc.-Petition for Declaratory Order, Fed. Carr. Cas. (CCH) ¶ 38285, 1996 WL 303722 (STB May 31, 1996) (contesting within 180 days is "a precondition for pursuing a claim," whether moving party chooses to pursue claim initially at Board or in court); Nat'l Ass'n of Freight

---

[6] Plaintiff also argues that the 180-day notice requirement under 49 U.S.C. § 13710(a)(3)(B) only applies to the Board because an action in court is the exclusive remedy for challenges under the ICCTA. See 49 U.S.C. § 14101(b)(2). This argument is also unpersuasive. The fact that the Board cannot provide a remedy is entirely irrelevant to the issue of whether a shipper's failure to contest within 180 days forecloses a subsequent challenge in court.

Transportation Consultants, Inc.-Petition for Declaratory Order, Fed. Carr. Cas. (CCH) ¶ 38308, 1997 WL 189658 (STB Apr. 9, 1997) (same).

## 2. "Shipper" Under The ICCTA

Second, plaintiff asserts that the ICCTA does not apply to its claims because it is not a "shipper" under the statute. As explained, 49 U.S.C. § 13710(a)(3)(B) governs billing disputes between motor carriers and "shippers." According to plaintiff, 49 U.S.C. § 13102(13) defines "shipper" as, among other criteria, a person who "is the shipper, consignor, or consignee of a household goods shipment." Therefore, 49 U.S.C. § 13710(a)(3)(B) only governs billing disputes between motor carriers and shippers of household goods. Because it shipped only commercial goods, plaintiff argues that it is not a "shipper" for the purposes of the ICCTA, and therefore the statute does not apply to this dispute.

Plaintiff's argument that it is not a "shipper" under the ICCTA hinges on a false premise. Specifically, it depends on the ICCTA limiting the definition of "shipper" to household goods. Yet, the ICCTA does not do so; the ICCTA provision that references household goods is not actually defining "shipper." 49 U.S.C. § 13102(13). Instead, it is explicitly defining "individual shipper," which is a different term under the ICCTA. See Nat'l Motor Freight Traffic Ass'n, Inc. v. Gen. Servs. Admin., 68 F. Supp. 3d 136, 140 (D.D.C. 2014) (noting that ICCTA does not specifically define "shipper" or elaborate on term). This is apparent not only because the statute actually uses the term "shipper" to define "individual shipper" itself, but also because the ICCTA does not use the two terms interchangeably. See id. Most importantly, while "individual shipper" appears elsewhere in the ICCTA, it does not appear in 49 U.S.C. § 13710(a)(3)(B), which confines its scope to disputes between "shippers" and motor carriers. Accordingly, although the ICCTA

limits the definition of "individual shipper" to household goods, it does not do the same for "shipper." As a result, plaintiff's argument that it is not a "shipper" under the ICCTA collapses.[7]

The ICCTA does not define who is a "shipper" under the statute. See id. When a statute does not define a term, the Court applies its "ordinary or dictionary definition[]." Peabody Twentymile Mining, LLC v. Sec'y of Labor, 931 F.3d 992, 997 (10th Cir. 2019). Black's Law Dictionary defines "shipper" as "[s]omeone who ships goods to another." SHIPPER, Black's Law Dictionary (11th ed. 2019). Here, the allegations in plaintiff's amended complaint establish that it is a shipper. Plaintiff alleges that it "contracted with [defendants] to ship goods," "entered into the form contract with [defendants] and shipped goods" and "shipped goods with [d]efendants." First Amended Class Action Complaint (Doc. #10) ¶ 3, 12, 25. Because plaintiff is a shipper, 49 U.S.C. § 13710(a)(3)(B) applies to any billing dispute between it and a motor carrier.

### 3. "Billing Dispute" Under The ICCTA

Finally, plaintiff asserts that the ICCTA does not apply because its claims do not involve a "billing dispute." As explained, 49 U.S.C. § 13710(a)(3)(B) governs billing disputes between motor carriers and shippers. Plaintiff argues that its claims do not constitute a "billing dispute" because they involve defendants' "decade-long practice of systematically overcharging its customers through a deceptive and unlawful scheme." Memorandum In Opposition To

---

[7] To support its assertion that the ICCTA applies only to shippers of household goods, plaintiff also argues that the Board "only has authority to govern a dispute that involves residential household goods movements." Memorandum In Opposition To Defendants' Motion To Dismiss (Doc. #14) at 14. To do so, plaintiff cites (1) a Senate Committee Report describing the 1996 transition from the Interstate Commerce Commission to the Board and (2) the introduction page from the Board website. Neither of these sources establish that the Board's authority is so limited. See Gaines Motor Lines, Inc. v. Klaussner Furniture Indus., Inc., 734 F.3d 296, 303 (4th Cir. 2013) (under ICCTA, Board "maintained jurisdiction over all motor carriers who transport goods in interstate commerce and between the United States and its territories or a foreign country") (citing 49 U.S.C. § 13501(1)(A)(E)).

Defendants' Motion To Dismiss (Doc. #14) at 15. The only authority that plaintiff cites in support of this argument is a decision from the U.S. District Court for the Southern District of New York that fraudulent business practices do not constitute a "billing dispute" under the ICCTA. Grocery Haulers, Inc. v. C & S Wholesale Grocers, Inc., No. 11-3130-DLC, 2012 WL 4049955, at *11 (S.D.N.Y. Sept. 14, 2012). There, however, plaintiff brought its suit under 49 U.S.C. § 14704(a)(2), a separate section of the ICCTA with its own limitations period. Id. (citing Owner-Operator Indep. Drivers Ass'n, Inc. v. Mayflower Transit, LLC, 615 F.3d 790, 793 (7th Cir. 2010)). Here, plaintiff does not bring a cause of action under the ICCTA. Rather, it brings state-law claims alleging that defendants systematically overcharged for shipments. These claims constitute a "billing dispute" under 49 U.S.C. § 13710(a)(3)(B). See Cerdant, Inc., 2010 WL 3397501, at *6 (allegations involving "scheme" and "common course of conduct" to overcharge shippers constitutes "billing dispute" under ICCTA).

### B. Compliance With The ICCTA

Plaintiff asserts that even if the ICCTA applies to its claims, it complied with the statute by contesting the bill within 180 days of discovering the inflated charges. Thus, plaintiff essentially requests that the Court toll the 180-day requirement under the ICCTA until a shipper discovers, or should have discovered, the billing problem. Beyond referencing general principles of equitable estoppel and fraudulent concealment, plaintiff cites no authority to support such a rule under the ICCTA.

Although the Court may toll statutes of limitation, it may not toll repose periods. Nat'l Credit Union Admin. Bd. v. Nomura Home Equity Loan, Inc., 764 F.3d 1199, 1224 (10th Cir. 2014). An ordinary statute of limitations is a "procedural device" that begins to run when the claim accrues. Id. Accordingly, the Court may equitably toll the statute of limitations to begin

"when an injury is discovered or reasonably should have been discovered." Id. By contrast, a repose period "creates a substantive right in those protected to be free from liability after a legislatively-determined period of time." Id. (quoting Amoco Prod. Co. v. Newton Sheep Co., 85 F.3d 1464, 1472 (10th Cir. 1996)). Thus, unlike a statute of limitations, the Court may not equitably toll a repose period. Id. As a result, a repose period may "extinguish a plaintiff's cause of action" whether or not plaintiff should have discovered the violation or injury within the designated period. Id. (quoting Chang v. Baxter Healthcare Corp., 599 F.3d 728, 733 (7th Cir. 2010)).

To determine whether the time specified in a statute is a repose period or a statute of limitations, the Court identifies "the time at which the respective periods commence." Id. at n.11 (quoting 54 C.J.S. Limitations of Actions § 7 (2013)). Generally, statutes of limitation begin to run "upon accrual of the claim," or when the injury occurs. Id. By contrast, a repose period "begins when a specific event occurs, regardless of whether a cause of action has accrued or whether any injury has resulted." Id. In other words, a repose period is tied to an event independent of the injury itself, and the designated period begins to run after that event occurs. Alexander v. Beech Aircraft Corp., 952 F.2d 1215, 1218 n.2 (10th Cir. 1991) (under some products liability statutes, repose period begins when purchaser receives product); Nat'l Credit Union Admin. Bd., 764 F.3d at 1224 (statute of repose "is a fixed, statutory cutoff date, usually independent of any variable, such as claimant's awareness of a violation."). Once that period lapses, the statute of repose "typically bars the right to bring an action." Alexander, 952 F.2d at 1218 n.2.

Here, the ICCTA provision requiring shippers to challenge bills within 180 days of receipt is a repose period. Under the ICCTA, a shipper must contest a bill "within 180 days of receipt of

the bill in order to have the right to contest such charges." 49 U.S.C. § 13710(a)(3)(B). Thus, the ICCTA explicitly states that the 180-day period commences when the shipper receives the bill, not when the shipper's claims accrue. In other words, under the plain language of the statute, the designated period is tied to a specific event independent of the injury itself: the receipt of the bill. See Alexander, 952 F.2d at 1218 n.2 (citing Eddings on Behalf of Eddings v. Volkswagenwerk, A.G., 835 F.2d 1369, 1371 (11th Cir. 1988) (repose period in products liability statute begins to run when purchaser receives product)). Because 49 U.S.C. § 13710(a)(3)(B) is a repose period, the Court may not invoke equitable principles to toll it. Nat'l Credit Union Admin. Bd., 764 F.3d at 1224. Accordingly, pursuant to the ICCTA, plaintiff does not have a cause of action because it did not contest the bills within 180 days of receipt. Therefore, the Court dismisses this action because the amended complaint fails to state a claim upon which relief can be granted.

**IT IS THEREFORE ORDERED** that Defendants' Motion To Dismiss Amended Complaint (Doc. #12) filed July 2, 2019 is **SUSTAINED**.

Dated this 31st day of October, 2019 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge